UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HYMAN ENTERPRISES LLC, )
ULTRAWELLNESS LLC, AND MARK )
HYMAN, M.D., )
 )
          Plaintiffs )
 )
    v. ) Civil Action No. 10-30210-MAP
 )
 )
 )
NATURAL HEALTH SHERPA LLC, )
MARCUS STOCKMAN, AND )
JEFFREY RADICH, )
 )
          Defendants )

REPORT AND RECOMMENDATION WITH REGARD
TO DEFENDANTS' MOTION TO DISMISS (Document No. 12)
May 20, 2011

NEIMAN, U.S.M.J.

Presently before the court are trademark infringement and breach of contract claims by Mark Hyman M.D. ("Dr. Hyman"), sole owner of Hyman Enterprises LLC ("Hyman Enterprises"), which in turn owns UltraWellness LLC ("UltraWellness") (together "Plaintiffs"). Marcus Stockman ("Stockman") and Jeffrey Radich ("Radich"), former "members" of UltraWellness, who currently own "membership interests" in Natural Health Sherpa LLC ("Natural Health Sherpa") (together "Defendants"), have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Defendants' motion has been referred to this court for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). For the

reasons which follow, the court will recommend that Defendants' motion to dismiss be denied.

## I. FACTUAL BACKGROUND

The following facts are taken from the complaint and stated in a light most favorable to Plaintiffs. Hyman Enterprises and UltraWellness are Massachusetts limited liability companies owned by Dr. Hyman. (Compl. ¶¶ 3-5.) Dr. Hyman is a medical professional and a New York Times best-selling author. (*Id.* ¶¶ 6-7.) Dr. Hyman is well known in the fields of alternative and functional medicine. (*Id.* ¶ 7.)

Dr. Hyman owns and controls his name (the "Hyman Name"), and Hyman Enterprises has the right to authorize use of the Hyman Name. (*Id.* ¶ 8.) UltraWellness, in turn, is the owner and federal registrant of ULTRAWELLNESS trademarks (the "Marks"). (*Id.* ¶ 9.) Together, Plaintiffs have marketed and sold various products in connection with the Marks and the Hyman Name, including vitamins, supplements, books, cds, dvds, information products and seminars on health topics. (*Id.* ¶ 10.) The products have been marketed and sold online using email advertising through websites, including www.ultrawewllness.com and www.drhyman.com. (*Id.* ¶ 11.) Plaintiffs assert that they have created recognized brands and exclusively enjoy the reputation and goodwill they have generated in association with the Hyman Name and Marks. (*Id.* ¶ 12.)

Stockman and Radich, former members of UltraWellness, entered into an agreement with Plaintiffs on June 30, 2010 (the "Agreement"), in which they agreed not to initiate contact with customers or potential customers regarding Plaintiffs' past and

2

future operations and, as well, to keep the terms of the Agreement confidential. (*Id.* ¶¶ 18-20.) That same day, Stockman and Radich entered into a Non-compete Agreement, in which they agreed to refrain from engaging in any business using the name of a medical professional involved in the field of functional medicine for a period of two years. (*Id.* ¶¶ 21-22.)

On or about November 1, 2010, Natural Health Sherpa, under the direction of Stockman and Radich, sent a promotional email with the subject line "Special Note to UltraWellness Customers" to 290,000 customers and potential customers of Plaintiffs. (*Id.* ¶¶ 24-25.) According to Plaintiffs, Defendants intentionally used the UltraWellness Marks and the Hyman Name without authorization to promote their services and products and, in doing so, were likely to and did cause confusion among consumers as to the source of origin of such services and products. (*Id.* ¶¶ 27-28.) Plaintiffs also assert that consumers of Defendants' health information services and products are likely to believe and have believed that Defendants' products originate from, are sponsored by, or are somehow associated with Plaintiffs. (*Id.* ¶ 29.) Finally, Plaintiffs assert, Defendants possessed actual knowledge of Plaintiffs' UltraWellness Marks and federal registrations and the Hyman Name. (*Id.* ¶ 20.)

Plaintiffs' complaint asserts the following thirteen counts against Defendants: <u>Count One</u>: trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); <u>Count Two</u>: false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); <u>Count Three</u>: state law right of publicity, M.G.L.A. 214 § 3A; <u>Count Four</u>: common law trademark infringement; <u>Count Five</u>: common law unfair competition; <u>Count Six</u>: state

law unfair competition, M.G.L.A. 93A §2 (regarding the Marks); <u>Count Seven</u>: state law unfair competition, M.G.L.A. 93A §2 (Hyman Name); <u>Count Eight</u>: breach of contract (contact with customers); <u>Count Nine</u>: breach of contract (confidentiality); <u>Count Ten</u>: breach of contract (Non-compete Agreement); <u>Count Eleven</u>: prima facie tort; <u>Count Twelve</u>: indemnity for attorneys' fees; and <u>Count Thirteen</u>: attorneys' fees.

In their motion, Defendants assert that, pursuant to Fed. R. Civ. Pro. 12(b)(6), Plaintiffs have failed to plead any facts upon which relief may be granted as to Counts One and Two under the Lanham Act. In the alternative, Defendants claim fair use as an affirmative defense to Count One and move for dismissal pursuant to Rule 12(b)(6) as well. Finally, assuming the court dismisses the first two claims, Defendants move to dismiss the remaining state law counts (Counts Three through Thirteen) for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(1).

## II. STANDARDS

As for a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint generally requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). According to the Supreme Court, this means that a plaintiff must allege enough facts so that the claim is "plausible on its face," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56, 570 (2007), *i.e.*, the factual content pled should "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As to a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the court reviews it as it would a motion to dismiss pursuant to Rule

4

12(b)(6), *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994), mindful that the plaintiff has the burden of establishing that subject matter jurisdiction exists. *See Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995).

### III. DISCUSSION

As indicated, Defendants first move to dismiss Counts One and Two for failure to state claims upon which relief may be granted. As described, Counts One and Two are, respectively, the trademark infringement and false designation of origin claims under Sections 32(a) and 43(a) of the Lanham Act. Section 32(a) of the Lanham Act provides, in pertinent part:

> (1) Any person who shall, without the consent of the registrant--
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive
> - shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(a). In turn, Section 43(a) provides, in pertinent part, as follows:

> Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false, or misleading description of fact, or false or misleading representation of facts, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a). In the alternative, Defendants, based on their affirmative defense

5

of fair use, seek to dismiss Count One, the trademark infringement claim, for its lack of specific factual detail.

Plaintiffs defend the sufficiency of their federal claims. However, should the court not agree, Plaintiffs request leave to amend their complaint to establish the requisite damages for diversity jurisdiction over their state law claims, as diversity of citizenship between the parties is not disputed.

The court does not believe that an amendment to the complaint is necessary on Plaintiffs' part. In short, the court concludes that Plaintiffs' factual allegations meet the minimum threshold required to survive Defendants' 12(b)(6) motion. In addition, the court finds that Defendants have not shown that their fair use defense has been established as a matter of law at this time.

    A. <u>Defendants' Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)</u>

Defendants move for dismissal of Counts One and Two based on their reading of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), which directs that "a plaintiff's obligation to provide the ... grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. In support, Defendants describe the allegations in paragraphs 27 through 35 and 37 through 40 of Plaintiffs' complaint as unfounded assertions devoid of the "factual enhancements" required to survive a motion to dismiss. *Id.* at 557. The court disagrees.

As Plaintiffs assert, a complaint must only contain "enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claims."

*Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  Here, reading Plaintiffs' complaint in its entirety rather than in isolated sections, the court concludes that they have made a threshold showing of viable Lanham Act claims, supported by factual allegations, namely: (1) possession and use of a valid mark, (2) use of the mark in commerce by defendants without permission, and (3) likelihood of consumer confusion.  *See Venture Tape Corp. v. McGills Glass Warehouse,* 540 F.3d 56, 60 (1st Cir. 2008).  Indeed, the first two elements of Plaintiffs' claim of trademark infringement do not appear to be contested; Plaintiffs own the Marks and Defendants do not dispute Plaintiffs' use of the Marks in commerce.

For present purposes, therefore, the only issue is whether Plaintiffs have adequately pled likelihood of confusion.  Likelihood of confusion is a fact-specific inquiry, namely, whether "the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Hearts on Fire Company, LLC v. Blue Nile, Inc.,* 603 F. Supp. 2d 274, 283 (D. Mass. 2009) (quoting *Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996)).

From the court's perspective, Plaintiffs have met the minimal threshold required for the likelihood of confusion element.  The complaint states that both Plaintiffs and Defendants operate websites promoting health information products and services. (Compl. ¶¶10-11, 23, 27-28.)  It also states that Defendants sent an email to Plaintiffs' customers using Plaintiffs' ULTRAWELLNESS  mark in its subject line.  At the very least, this allegation raises a real possibility of initial interest confusion.  *See Hearts on*

*Fire*, 603 F. Supp. 2d at 287 ("initial interest confusion can support a claim under the Lanham Act ... where the plaintiff has plausibly alleged that consumers were confused").  The Marks and the Hyman Name were also used in the body of the email, thereby supporting Plaintiffs' claim that the communication was designed to "promote [Defendants'] own services and products offered through their website."  (Compl. ¶ 26.)

To be sure, Defendants offer benign reasons for referring to the Marks and the Hyman Name in the email.  Nonetheless, given the fact-specific nature of the likelihood of confusion inquiry, the court believes that an opportunity for the parties to discover and submit facts beyond those asserted in the complaint is particularly appropriate.  In short, while Plaintiffs' complaint at times does read as a recitation of the elements of a trademark infringement cause of action, read in its entirety it asserts more than enough facts supporting the Lanham Act claims.

B.  Dismissal Based on Defendants' Affirmative Defense of Fair Use

Defendants also move to dismiss at least Count One based on their affirmative defense of fair use.  Fair use is use of a "name" or "term" as something other than a mark, such as:

> ...the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

15 U.S.C. § 1115(b)(4).

8

Affirmative defenses can be raised in a Rule 12(b)(6) motion if the "facts establishing the defense are definitely ascertainable from the complaint and the other allowable sources of information, and those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New Engl. Sch. of Law,* 389 F.3d 5,12 (1st Cir. 2004). As is clear, however, the bar is high for dismissal. As the First Circuit explained, "review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. Pro. 12(b)(6), must 'leave no doubt' that the plaintiff's action is barred by the asserted defense." *Blackstone Realty LLC v. F.D.I.C.,* 244 F.3d 193, 197 (1st Cir. 2001) (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998)).

Here, Defendants argue they used "UltraWellness" as a name and not a mark. Additionally, they argue that a close examination of the email makes clear that their uses of "UltraWellness" and "Dr. Hyman" were purely descriptive, that is, used in order to tell the truth about the business separation between Plaintiffs and Defendants. In support, Defendants have submitted five exhibits: (1) the first version of the email sent by them; (2) the second version of the email sent by them; (3) a license agreement between Plaintiffs and Defendants; (4) the Agreement between Plaintiffs and Defendants; and (5) the Non-Compete Agreement. Defendants, however, rely mainly on the first email they sent.

For their part, Plaintiffs assert that the court ought not consider Defendants' copies of the emails, as Defendants have not submitted any affidavit verifying their authenticity. Plaintiffs also point out that neither of Defendants' email exhibits contain

9

the "subject line" referenced in the complaint, in which the mark UltraWellness was used. *See Flentye v. Kathrein*, 485 F. Supp. 2d 903 (N.D. Ill. 2007) (printouts could not appropriately be considered on motion to dismiss unfair competition claim based on website marks under Lanham Act, since attachments were not alleged as entirety of publications on web referred to in complaint).

There is some merit to Plaintiffs' argument but, as far as the court is concerned, the question of authenticity is a tempest in a teapot. As an initial matter, the First Circuit recognizes the ability of a court to consider documents outside the complaint when the complaint's factual allegations are "linked to" and "dependent upon" the document, *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998), as appears to be true here given Plaintiffs' reference to the emails as the source of the allegedly infringing acts. *See also Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (court may consider document "integral to or explicitly relied upon" in complaint, though not physically attached to the pleadings) (quoting *Clorox Co. P.R. v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000)). Second, to a large degree, the authenticity of the emails has been resolved, at least for present purposes; there was no dispute during the course of the hearing on Defendants' motion that the subject matter line to the emails did in fact mention "UltraWellness." *See Beddall,* 137 F.3d at 17 ("When, as now, a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule

12(b)(6)"); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir.1988) (article referenced in complaint considered where authenticity was not challenged); *see also Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

Granted, as mentioned, Defendants have attempted to explain the benign purpose of their use of the UltraWellness mark, namely, an effort to avoid characterization of their email as "spam." That explanation, however, not only acknowledges the use of the mark, albeit for non-infringing purposes, but may actually support rather than undermine Plaintiffs' claims of deception.

In any event, at the court's request, Defendants, post-hearing, provided an explanation for other differences in the two emails proffered by them, in particular, the presence in one and the absence in the other of a disclaimer regarding Dr. Hyman. *See* Defendants' Supplement to Hearing (Doc. No. 18) ("To be clear, Dr. Hyman is in no way affiliated with this new website."). While, as Plaintiffs point out, Defendants' unsworn explanation may go beyond the scope of the court's inquiry, Defendants' Supplement nonetheless acknowledges that close to 3,000 addressees opened the attachment to the email and at least suggests that Defendants may have continued to circulate additional emails using the UltraWellness mark and Hyman Name. *See* Plaintiffs' Letter Response (Doc. No. 19).

In the end, the court finds it impossible to determine "with certitude" at this initial

step of the proceedings that Defendants' use of the Marks, as they claim, was fair. *See Rodi*, 389 F.3d at 11. While there is a possibility that Defendants' use of the Marks may hereafter be found to fall within the scope of "fair use," such a determination as a matter of law is, in the court's estimation, impossible at this time. Accordingly, the court will recommend that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) be denied. As a result, there is no reason to consider Defendants' dependant request to dismiss Counts Three through Thirteen, Plaintiffs' state law claims.

IV. CONCLUSION

For the reasons stated, the court recommends that Defendants' Motion to Dismiss be DENIED.[1]

DATED: May 20, 2011

/s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge

---

[1]The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.